THE CITY OF TROY, Appellant, *v.* UNITED TRACTION COMPANY, Respondent.

*Public service commission — jurisdiction and authority — when city of second class has no power to enact ordinance in conflict with its order.*

1. The public service commission was established, among other things, for the purpose of promoting uniformity and consistency in authoritative directions to be given to public service corporations, and to constitute a tribunal trained to consider and determine controversies and problems relating to such corporations, and to direct and supervise their relations to and dealings with the public as their patrons. Hence, when a decision has been made by it in a matter properly before it and within its jurisdiction, a city whose charter does not confer power and authority to take action with reference to the subject-matter involved, inconsistent with the provisions of the Public Service Commissions Law (L. 1907, ch. 429; Cons. Laws, ch. 48), has no power to pass an ordinance nullifying such decision.

2. The power of the public service commission to make an order is not dependent upon the receipt of a complaint or petition therefor from a person or corporation, but by express statutory authority the commission is given power to make such an order upon its own motion, and any person interested may, after an order has been made, apply for a re-hearing in respect to any matter determined therein and the commission shall grant and hold such re-hearing if in its judgment sufficient reason therefor be made to appear.

*City of Troy* v. *United Traction Co.*, 137 App. Div. 935, affirmed.

(Argued May 5, 1911; decided June 13, 1911.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the third judicial department, entered April 6, 1910, affirming a judgment in favor of defendant entered upon a verdict directed by the court.

The nature of the action and the facts, so far as material, are stated in the opinion.

*George B. Wellington* for appellant. The city had power to enact the ordinance. (*People ex rel. Troy Press*

*Co.* v. *Common Council,* 114 App. Div. 354; 186 N. Y. 548; *Rice* v. *Rudderman,* 10 Mich. 125; *City of Rochester* v. *M. F. M. Co.,* 199 N. Y. 207.) The order of the public service commission is not *res adjudicata.* (*Rudd* v. *Cornell,* 171 N. Y. 114, 127; *Zoeller* v. *Riley,* 100 N. Y. 102; *Clark* v. *Scovill,* 198 N. Y. 279; *Cuccurullo* v. *S. I., etc., Co.,* 102 App. Div. 276; *Everett* v. *Everett,* 180 N. Y. 452.)

*Lewis E. Carr* and *Patrick C. Dugan* for respondent. The order of the public service commission in the matter of the complaint of Elias P. Mann, mayor of the city of Troy, against the respondent, is a complete defense to this action. (*Pray* v. *Hegeman,* 98 N. Y. 351; *Stokes* v. *Foote,* 172 N. Y. 344; *Maasch* v. *Grauer,* 123 App. Div. 669; *Bank of Staten Island* v. *City of New York,* 68 App. Div. 232; 174 N. Y. 519; *Culross* v. *Gibbons,* 130 N. Y. 447; *People ex rel. Meyers* v. *Barnes,* 114 N. Y. 318; *Leavitt* v. *Wolcott,* 95 N. Y. 212.) The conditions expressed in the Oakwood avenue franchise cannot be changed by the common council without the consent of the respondent. (*People* v. *O'Brien,* 111 N. Y. 1; *R. & C. T. R. Co.* v. *Joel,* 41 App. Div. 45; *City of Cleveland* v. *C. C. Ry. Co.,* 194 U. S. 517; *Pearsall* v. *G. N. Ry. Co.,* 161 U. S. 664; *C. I., F. H. & B. R. R. Co.* v. *Kennedy,* 15 App. Div. 588; *Mayor, etc.,* v. *T. A. R. R. Co.,* 33 N. Y. 42; *B. C. R. R. Co.* v. *B. C. R. R. Co.,* 32 Barb. 364; *People ex rel. Bliss* v. *C. W. D. Ry. Co.,* 118 Ill. 113; *Africa* v. *Knoxville,* 70 Fed. Rep. 729; *Old Colony Trust Co.* v. *City of Atlanta,* 83 Fed. Rep. 39; 88 Fed. Rep. 859.)

Chase, J. The plaintiff is a city of the second class. It has been subject to the provisions of the uniform charter of cities of the second class since January 1, 1908. (Laws of 1906, chapter 473, now chapter 53 of the Consolidated Laws.) Prior to January 1, 1908, it had been since January 1, 1900, subject to chapter 182 of the Laws

of 1898 (White charter), and prior to 1900 it was subject to special charter.

The defendant is a street railroad corporation, and it has succeeded to the rights and franchises of the Troy City Railway Company, another street railroad corporation which had succeeded to the rights and franchises of the Troy and Albia Horse Railroad Company, another street railroad corporation.

The plaintiff on August 5, 1890, granted certain franchises to the Troy and Albia Horse Railroad Company by an ordinance, section 8 of which is as follows: "The said company shall place suitable cars on its said railroad so extended for the convenience and comfort of passengers, and shall run the said cars each and every day, both ways, as often as the public wants and convenience may require and under such reasonable directions and regulations as the common council may from time to time prescribe by a two-thirds vote of all the members of that body."

On November 21, 1895, it granted a franchise to the Troy City Railway Company to operate a street railroad on Oakwood avenue in said city by an ordinance, section 2 of which is in part as follows: " * * * The extension of such railroad and the operation thereof on the streets and avenue above mentioned are hereby made subject to all the conditions and provisions mentioned in the ordinance passed August 5, 1890, relative to the extension of the railroad of the Troy & Albia Horse Railroad Company (predecessors of the Troy City Railway Company) as fully as if the same were incorporated herein." The Oakwood avenue line was built and operated, and on January 23, 1900, an ordinance was passed by the plaintiff which required the defendant's predecessor in title to run cars on each of its lines both ways at intervals not to exceed ten minutes from five o'clock in the morning until seven o'clock in the evening, and thereafter as the public wants and conveniences might require. The defendant failed

to comply with said ordinance, and on February 28, 1908, the mayor of the city of Troy, on behalf of himself individually as a resident and taxpayer in said city and as the mayor of the city, petitioned the public service commission of the state of New York in the second district to "determine the just, reasonable and adequate service hereafter to be enforced on said Oakwood avenue line to be observed by said United Traction Company, and fix and prescribe the same by an order to be served upon said United Traction Company, and that said United Traction Company be ordered to comply with the terms of said ordinance and to satisfy the cause of complaint herein and order said United Traction Company to increase the number of its cars on said Oakwood avenue route so that there may be a car both ways, every day, at intervals not to exceed ten minutes from five o'clock in the morning until seven o'clock in the evening." In his petition he alleged the facts stated herein, and he further alleged among other facts that "Said United Traction Company has for several years last past failed to comply with the terms of said ordinance (ordinance of Jan. 23, 1900) in that it has not run over said Oakwood avenue route or line, both ways, every day, cars at intervals not to exceed ten minutes, from five o'clock in the morning until seven o'clock in the evening. * * * Said railroad corporation does not run cars enough reasonably to accommodate the passenger traffic offered to it and does not run cars with sufficient frequency or at reasonable or proper times on its said Oakwood avenue route."

The United Traction Company answered said petition and among other things denied the allegations of the petition charging it with failure to operate a sufficient number of cars on the Oakwood avenue line to accommodate the public. A hearing was had upon said petition and answer and it resulted in the public service commission making an order on July 30, 1908, the material parts of which are as follows:

"Ordered, that said United Traction Company be and it is hereby directed to furnish on its Oakwood avenue line in Troy, N. Y., a passenger car service as follows:

"On Week Days: A fifteen-minute service beginning at the Union Station and running northward at least to Frear Avenue, and as far northward beyond that point as may be found practicable without increasing the number of cars now in use on said line, viz., two.

"The first car to leave Union Station at 6.15 A. M. and the last car to leave Union Station at 12 midnight; except that between the hours of 9.00 A. M. and 11.40 A. M. and between the hours of 2.10 P. M. and 5.10 P. M. the service shall be a twenty-minute service and the cars shall run from Union Station to St. Peter's Cemetery, the end of the line, on the twenty-minute schedule only.

"On Sundays: The service to be a twenty-minute service from 6.15 A. M. to 12.00 midnight, beginning at Union Station and running through to St. Peter's Cemetery, the end of the line.

"It is further ordered that this order shall take effect on August 10, 1908, and shall continue in force until modified or abrogated by this commission."

It is asserted and not denied that the public service commission on November 1, 1908, modified the order of July 30, 1908, which modification is evidenced in the record by a telegram sent to the defendant on that day, as follows: "Order in Oakwood Ave. Troy, line suspended until further notice will be satisfactory to resume 20 minute service to terminus that line commencing Nov. 2nd. * * *." The orders of the public service commission have been obeyed. On November 5, 1908, the plaintiff passed another ordinance by a vote of more than two-thirds of all the members of the common council of said city of which the following is a copy:

"Section 1. From and after the first day of December, 1908, the United Traction Company shall run its cars on its Oakwood avenue line, throughout its entire length

22

from Hoosick street to St. Peter's Cemetery, so that
there shall be a car both ways every day at intervals not
to exceed ten minutes, from six o'clock in the morning
until nine o'clock in the evening, and thereafter at inter-
vals not to exceed fifteen minutes until 12.30 at night.

"Section 2. For each and every day's refusal or neglect
of said United Traction Company to obey the provisions of
section 1 of this ordinance the company shall forfeit and
pay to the City of Troy the sum of twenty-five dollars, to
be collected by the City of Troy in a civil action brought
by it in its name."

It is conceded that the defendant did not obey said ordi-
nance. This action was commenced January 13, 1909, to
recover a penalty of twenty-five dollars for each day from
the time when said ordinance took effect to the day of the
commencement of the action.

The action has been twice tried. Upon the first trial
the plaintiff recovered judgment as demanded in its com-
plaint. An appeal was taken from such judgment to the
Appellate Division where the judgment was reversed and
a new trial granted. (*City of Troy* v. *United Traction
Co.,* 134 App. Div. 756.) Upon the second trial the plain-
tiff's complaint was dismissed. An appeal was taken
therefrom to the Appellate Division where the judgment
of dismissal was affirmed as stated without opinion.
(*City of Troy* v. *United Traction Co.,* 137 App. Div. 935.)

There is but one question requiring our consideration in
the determination of this appeal. It is whether the plain-
tiff had any authority or power to pass an ordinance incon-
sistent with an order duly made by the public service com-
mission relating to the frequency with which cars should
be run and maintained by the defendant on its Oakwood
avenue line in said city. The Public Service Commis-
sions Law (Laws of 1907, Chapter 429, now chapter 48
of the Consolidated Laws) expressly provides: "* * *
Whenever the commission shall be of opinion, after a
hearing, had upon its own motion or upon complaint,

that the regulations, practices, equipment, appliances, or service of any such common carrier, railroad corporation or street railroad corporation in respect to transportation of persons, freight or property within the state are unjust, unreasonable, unsafe, improper or inadequate, the commission shall determine the just, reasonable, safe, adequate and proper regulations, practices, equipment, appliances and service thereafter to be in force, to be observed and to be used in such transportation of persons, freight and property, and so fix and prescribe the same by order to be served upon every common carrier, railroad corporation and street railroad corporation to be bound thereby; and thereafter it shall be the duty of every common carrier, railroad corporation and street railroad corporation to observe and obey each and every requirement of every such order so served upon it. * * *." (Section 49.)

Such law also provides: "If, in the judgment of the commission having jurisdiction, any railroad corporation or street railroad corporation does not run trains enough or cars enough or possess or operate motive power enough, reasonably to accommodate the traffic, passenger and freight, transported by or offered for transportation to it, or does not run its trains or cars with sufficient frequency or at a reasonable or proper time having regard to safety, or does not run any train or trains, car or cars, upon a reasonable time schedule for the run, the commission shall, after a hearing either on its own motion or after complaint, have power to make an order directing any such railroad corporation or street railroad corporation to increase the number of its trains or of its cars or its motive power or to change the time for starting its trains or cars or to change the time schedule for the run of any train or car or make any other suitable order that the commission may determine reasonably necessary to accommodate and transport the traffic, passenger or freight, transported or offered for transportation." (Section 51.)

Such law also provides: "* * * Every order of a commission shall take effect at a time therein specified and shall continue in force for a period therein designated unless earlier modified or abrogated by the commission or unless such order be unauthorized by this or any other act or be in violation of a provision of the constitution of the State or of the United States." (Section 23.)

The public service commission was established, among other things, for the purpose of promoting uniformity and consistency in authoritative directions to be given to public service corporations and to constitute a tribunal trained to consider and determine controversies and problems relating to such corporations and to direct and supervise their relations to and dealings with the public as their patrons.    A construction of the Public Service Commissions Law that would permit any municipality to disregard and set at naught the orders of the public service commission in cases like the one now before us would not only cause confusion of authority but would make of no effect some of the work of the commission for the doing of which it was established.

The power of the city of Troy in the enactment of ordinances under the charter of cities of the second class is stated in section 30 as follows: "The legislative power of the city is vested in the common council thereof, and it has authority to enact ordinances, not inconsistent with law, for the government of the city and the management of its business, for the preservation of good order, peace and health, for the safety and welfare of its inhabitants and the protection and security of their property; * * * ."

Section 12 of chapter 182 of the Laws of 1898 is substantially the same as section 30 of the second class cities law just quoted.    Under the special charter of the city of Troy (Laws of 1892, Chapter 670) the power of the city to enact ordinances is expressly limited to such as are "not inconsistent with this act and the constitution and

laws of the state." No act has been called to our attention that gives the plaintiff power and authority to enact an ordinance inconsistent with the Public Service Commissions Law.

The right, if any, now existing in the city of Troy to enact ordinances relating to the running of cars in that city is subject to the qualification expressly provided in its charter that the same shall not be inconsistent with law. An ordinance inconsistent with an order duly made by the public service commission would be, and is, inconsistent with law. The ordinance of November 5, 1908, was wholly inconsistent with the order of the public service commission and in defiance and apparent nullification of the same. The power of the public service commission to make the order relating to the Oakwood avenue line was not dependent upon the receipt of a complaint or petition therefor from a person or corporation, but by express statutory authority the commission is given power to make such an order upon its own motion.

Any person interested may, after an order has been made, apply to the public service commission for a re-hearing in respect to any matter determined therein and the commission shall grant and hold such re-hearing if in its judgment sufficient reason therefor be made to appear. (Public Service Commissions Law, section 22.)

The judgment should be affirmed, with costs.

Cullen, Ch. J., Gray, Haight, Vann, Werner and Willard Bartlett, JJ., concur.

Judgment affirmed.