THE VILLAGE OF DEPEW, Plaintiff, *v.* THE LEHIGH VALLEY RAILROAD COMPANY, Defendant.

(County Court, Erie County, April, 1914.)

Statutes — where general statute covers subject in general — Railroad Law, § 53 — provision as to where steam railroad crosses street railroad at grade — application of local authorities upon notice to corporation — authority vested in Supreme Court instead of public service commission — provisions in force since enactment of chapter 242 of Laws of 1889 — Village Law, § 90 (10) — pleading.

Where a general statute covers a subject in general, in terms which include a particular case, for which a subsequent enactment makes a rule, the later statute must be held to be all that the legislature finally meant for the regulation of that case.

Section 53 of the Railroad Law, which became part of the Consolidated Laws in 1910, provides that where a steam railroad crosses a street railroad at grade, and the corporation owning or operating such railroad refuses, upon request of the local authorities, to station a flagman there, the public service commission may, upon application of the local authorities and upon ten days' notice to the corporation, order that a flagman be stationed at such point. With the authority vested in the Supreme Court instead of in the public service commission, the provisions have been in force without material change since the enactment of chapter 242 of the Laws of 1889. Held, that the provision of section 90 (10) of the Village Law, empowering the board of trustees of a village by a two-thirds vote to require railroad companies to erect gates at crossings and to

County Court, Erie County, April, 1914.   [Vol. 85.

employ competent flagmen thereat, was not repealed by section 53 of the Railroad Law passed in 1910, as both statutes may serve a useful purpose.

A judgment rendered in an action to recover a penalty for failure of defendant, a railroad company, to comply with an ordinance of the village of Depew requiring it to station a flagman at the crossing of defendant's road, overruling a demurrer to the complaint against defendant's contention that section 90 (10) of the Village Law was repealed by section 53 of the Railroad Law passed in 1910, affirmed.

APPEAL from a judgment rendered by a police justice and also from a judgment rendered in said court overruling a demurrer to plaintiff's complaint.

Levant D. Lester, for plaintiff..

Thomas R. Wheeler, for defendant.

LAING, J.   This is an appeal from a judgment for twenty-five dollars damages, and four dollars and seventy cents costs, rendered by police justice Michael J. Garry of the village of Depew, on January 22, 1914, and also from the judgment rendered in said court overruling a demurrer filed to the plaintiff's complaint on the 19th day of January, 1914.

The action was brought to recover a penalty for the failure of the defendant to comply with the provisions of an ordinance of the village of Depew requiring defendant to station a flagman at the crossing of defendant's road with the Transit road in the village of Depew.  The defendant and appellant takes the position that the ordinance in question was absolutely void and unenforceable because the village board of trustees had no power under the Village Law to enact this ordinance, and having no such power the action brought for alleged violation of the ordinance must fail.  The

defendant contends that subdivision 10 of section 90 of the Village Law was repealed by section 53 of the Railroad Law passed in 1910.

The provisions of the Village Law involved here are as follows:

" § 90. Village Ordinances. The board of trustees has power to enact, amend and repeal ordinances for the following purposes. * * *

" Sub. 10. * * * by a two-thirds vote of all the members of the board, to require railroad companies to erect gates at crossings, to employ competent men to attend the same, and to employ competent flagmen at such crossings."

The above provision was first inserted in the Village Law passed in 1897. Section 53 of the Railroad Law, which became part of the Consolidated Laws in 1910, reads in part as follows:

"At any point where a railroad crosses a street, highway, turnpike, plank-road, or traveled way at grade, or where a steam railroad crosses a street railroad at grade, and the corporation owning or operating such railroad, refuses, upon request of the local authorities, to station a flagman or erect gates, to be opened and closed when an engine or train passes, the public service commission may, upon the application of the local authorities and upon ten days' notice to the corporation, order that a flagman be stationed at such point, or that gates shall be erected thereat, and that a person be stationed to open and close them when an engine or train passes, or may make such other order respecting the same as it deems proper."

The argument of the defendant is that by chapter 596 of the Laws of 1909 it was provided with reference to the Consolidated Laws passed in that year that they should be construed as having been enacted as of

the various times when the provisions and sections thereof first became laws by any earlier statutes, and that no similar statute was passed in 1910 providing for the construction of the Consolidated Laws passed in that year. The defendant, therefore, contends that the Railroad Law is to be construed as having been passed in 1910, and if section 53 thereof is inconsistent with subdivision 10 of section 90 of the Village Law passed in 1909, subdivision 10 of section 90 of the Village Law is necessarily repealed. It is doubtless true that section 53 of the Railroad Law repeals the above provision of the Village Law if the two cannot stand together. Section 53 of the Railroad Law passed in 1910 was a re-enactment of a similar provision in the former Railroad Law except that the public service commission was substituted in place of the Supreme Court. The provisions of section 53 of the Railroad Law with the authority vested in the Supreme Court instead of in the public service commission have been in force without material change since the enactment of chapter 242 of the Laws of 1889. It follows, therefore, that from 1897 villages had authority to enact ordinances requiring railroad companies to erect gates at crossings and to employ men to attend the same, and to employ flagmen at such crossings, and during the same period the Supreme Court had and exercised the authority now vested in the public service commission by section 53 of the Railroad Law. It is not claimed that during that period there was any conflict between village boards and the Supreme Court acting respectively under these two statutes. It is not pointed out in what way there can be any more conflict between village boards and the public service commission acting respectively under these two statutes than there was between village boards and the Supreme Court from 1897 to 1910. It will be noted that

under section 53 of the Railroad Law the public service commission, as did the Supreme Court under the former statute, only acts upon the request of the local authorities. It can hardly be assumed that the local authorities will invoke the aid of the public service commission while at the same time they are trying to enforce their ordinances. In construing these two statutes an effort must be made to reconcile them. Repeals by implication are not favored in the law, and it is only in cases where the repugnancy is clear and manifest, and the two statutes cannot be reconciled or stand together, that this rule can be applied. *Mark v. State,* 97 N. Y. 572.

The two statutes with the Supreme Court substituted for the public service commission did stand together without, so far as we know, any conflict from 1897 to 1910. It is not apparent that the transfer of authority from the Supreme Court to the public service commission will in itself cause any conflict in carrying out the requirements of these two statutes. I am inclined to the opinion that both of these statutes may serve a useful purpose. It is suggested that ordinarily the enactment and enforcement of ordinances by the village board will give all the relief the public require. If that is so the public service commission may thereby be relieved from the labor and expense of investigating and acting in the premises. There may be occasions, however, when the railroads will fail to comply with the ordinances of the village board and then the village board may desire to invoke the large authority contained in section 53 of the Railroad Law.

It is suggested on behalf of the appellant that sections 49, 50 and 51 of the Public Service Commissions Law, irrespective of the provisions of section 53 of

the Railroad Law, confer upon the public service commission the broadest powers with reference to railroads, and manifestly intended to create in that commission a body where all matters pertaining to the operation of railroads should be exclusively determined. This suggestion would have much force if the legislature had not in re-enacting the Railroad Law amended section 53 as above shown. Where there has been a general enactment covering the subject in general, in terms which include the particular case, and there is a subsequent enactment which makes a rule for that particular case, the latter shall be held to be all that the legislature at last meant for the regulation of that case. *Excelsior Petroleum Co.* v. *Lacey,* 63 N. Y. 422.

This rule of law appears to be applicable to the matter here under discussion. It must be applied here, I think, in order to find the intention of the legislature in amending the Railroad Law.

*City of Troy* v. *United Traction Co.,* 202 N. Y. 333 is cited by appellant, and it is claimed that this case lays down general propositions which should control the disposition of the case now before the court. I find nothing in the Troy case that should control the disposition of this appeal. That case dealt with the matter as to the number of cars to be run by the defendant on certain streets of the city of Troy. The public service commission had already made a decision and that decision was in force when the city brought the action to enforce an ordinance requiring additional service by the defendant upon the same streets. The court held that as a decision had been made by the public service commission in a matter properly before it and within its jurisdiction, the city of Troy, whose charter did not confer power and authority to take action with reference to the subject-

matter involved inconsistent with the provisions of the Public Service Commissions Law, had no power to pass an ordinance nullifying such decision. . It is evident from the opinion in that case that importance is attached to the fact that the Troy charter expressly provided that its power to enact ordinances was limited to such as were "not inconsistent with this act and the constitution and the laws of the state," and the court concludes that the ordinances enacted were inconsistent with the provisions of the Public Service Commissions Law. It is true that the opinion in that case lays down the proposition that the Public Service Commissions Law was established, among other things, for the purpose of promoting uniformity and consistency in authoritative directions to be given to public service corporations and to constitute a tribunal trained to consider and determine controversies and problems relating to such corporations and to direct and supervise their relations to and dealings with the public as their patrons, and in connection with that proposition the opinion states that a construction of the Public Service Commissions Law that would permit any municipality to disregard and set at naught the orders of the public service commission in cases like the one there under consideration would not only cause confusion of authority but would make of no effect some of the work of the commission for the doing of which it was established. The language used in the opinion in that case all has reference to facts then before the court. No rule is there laid down which is of importance in the matter now under consideration.

The judgment appealed from should be affirmed, with costs.

Judgment affirmed, with costs,