In the Matter of Long Island Lighting Company, Petitioner, against William Shields, as Mayor of the Village of Old Brookville, et al., Respondents.

Supreme Court, Special Term, Nassau County, November 18, 1947.

*Charles G. Blakeslee, Philip Huntington, David S. Hill, Jr.,* and *Charles J. Tomick* for petitioner.

*Theodore V. Summers* for respondents.

Colden, J. Application pursuant to article 78 of the Civil Practice Act for an order directing respondents to issue a permit to petitioner to erect and maintain poles and electric lines for the transmission of electricity in certain streets of the Incorporated Village of Old Brookville.

Petitioner, a public utility corporation, is engaged in generating and distributing electricity in the counties of Nassau and Suffolk. It furnishes electric current to more than 173,000

consumers who are solely dependent thereon for light and power. It maintains three generating plants, the one at Glenwood being the principal source of power. Its Newbridge Road substation is the central distributing point. It desires to transmit the power generated at Glenwood to the Newbridge Road substation by means of a high tension wire carrying 66,000 volts. The proposed route lies through certain streets of the respondent village which is almost entirely residential.·

A previous application, which was denied by the village clerk, was the subject of a similar proceeding under article 78 of the Civil Practice Act. The relief sought was denied at Special Term. The Appellate Division, in affirming that disposition, indicated that the transmission line is subject to regulation by the board of trustees to which application should be made directly, and that if the board did not approve, it " should include affirmative, reasonable, regulatory proposals rather than, merely, a flat rejection of the application." (*Matter of Long Island Lighting Co.* v. *Simonson,* 272 App. Div. 943.)

Petitioner then filed the application which is the subject of this proceeding. The board of trustees denied the permit for several reasons, chief among which was that the location of a high tension transmission line " above ground " over said streets was " inherently dangerous and constituted a menace to the health and safety of the community." In this denial was the implication, clearly reaffirmed in their brief, that respondents would issue a permit for the high tension line if it were placed in an underground conduit. Respondents' opposition to an overhead line is based on the possibility of accidents that may occur during storms, and in the affidavit of the Mayor, annexed to the answer herein, is alleged an incident which occurred on April 25, 1947, when one of the petitioner's high tension lines on Glen Head Road, near the Long Island Rail Road Station, snapped and the flailing wire, after whipping about, came in contact with a gasoline service station building causing a short circuit which resulted in a fire which destroyed the building. The accident occurred at 2:00 o'clock in the morning, but respondents argue that had it occurred when an incoming train had discharged its passengers at the railroad station, there could have resulted serious loss of life or injury to many people.

Respondents do not entirely oppose the transmission of electricity which they recognize as essential to modern civilization but contend that since they have not only the right, but also the duty, to safeguard the health and welfare of their residents,

their requirement that a high voltage line be placed underground is not unreasonable. Petitioner does not deny that respondents have the right to condition the granting of a permit upon compliance with reasonable regulations, but contends that it cannot be required to place its line underground. In support of that position it cites the case of *Village of Carthage* v. *Central N. Y. Tel. Co.* (185 N. Y. 448). That authority, however, was later questioned, as was pointed out by the Court of Appeals in *New York Tel. Co.* v. *Bd. of Education* (270 N. Y. 111, 118). Moreover, there is a vast difference between telephone lines and high tension power lines. In *New York City Tunnel Authority* v. *Consolidated Edison Co.* (295 N. Y. 467, 475), the Court of Appeals quoted with approval from *Transit Comm.* v. *Long Island R. R. Co.* (253 N. Y. 345, 351), as follows: " * * * public service corporations maintain their rights in the streets, subject to reasonable regulation and control, and are bound to relocate their structures at their own expense whenever the public health, safety or convenience requires the change to be made."

If they can be required to relocate their structures, they can certainly be required to locate them originally in conformity with reasonable regulations of the village authorities.

Upon the record presented it cannot be said that the action of the respondents in denying petitioner's application for a permit was unreasonable or arbitrary, and, accordingly, the application is denied.

Submit order.