17 N.Y.2d 652 (1966)
In the Matter of Long Island Lighting Company, Appellant,
v.
Leonard L. Horn et al., Constituting the Zoning Board of Appeals of the Town of Huntington, Respondents.
Court of Appeals of the State of New York.
Argued February 16, 1966.
Decided March 24, 1966.
Edward J. Walsh, Jr., Edward M. Barrett, Ira L. Freilicher, David L. Sohn and Jackson A. Dykman for appellant.
Frank J. Mack, Town Attorney, for respondents.
John A. Farrell and James M. Baisley for New York State Electric & Gas Corporation, amicus curiae.
Morrell S. Lockhart, Theodore J. Carlson and M. Wade Kimsey for Central Hudson Gas & Electric Corporation, amicus curiae.
Anthony Romano for Justine L. Lambert, amicus curiae.
Concur: Chief Judge DESMOND and Judges FULD, BURKE, SCILEPPI, BERGAN and KEATING. Judge VAN VOORHIS dissents in the following opinion.
Order affirmed, with costs, upon the opinion of Justice MUNDER, at the Supreme Court, County of Suffolk, dated July 23, 1964 (49 Misc 2d 717).
VAN VOORHIS, J. (dissenting).
This app eal concerns expertise, but the question is whose expertise, expertise regarding what and who are the people to whom the experts owe responsibility? The expertise of the Public Service Commission is well known. Its jurisdiction embraces the manufacture, conveying, transportation, sale or distribution of electricity for light, heat or power (Public Service Law, § 5, subd. 2; §§ 64, 66). It is specifically empowered by section 66 to have supervision over electric corporations having authority "to lay down, erect or maintain wires, pipes, conduits, ducts or other fixtures in, over or under the streets, highways and public places of any municipality" for the purpose of "transmitting electricity for light, heat or power, or maintaining underground conduits or ducts for electrical conductors". Not only are the Public Service Commissioners experienced in this field, but they are supplied with a staff of engineering, real estate, financial and legal experts to inform and advise the Commissioners in discharging the function of regulating the manufacture, sale, distribution, financing and payment by the consumer in a safe, suitable and economic manner for the benefit of the entire public. Zoning boards of appeal of towns and other municipalities do not possess nor are they expected to exercise an expertise in regard to the regulation of the generation or distribution of electric power except in limited and local respects. Their responsibilities do not extend to the protection of the rate-paying consumers of a utility system or to the regulation of public utility companies *655 in any general way. In City of Troy v. United Traction Co. (202 N.Y. 333, 340) it was said that "A construction of the Public Service Commissions Law that would permit any municipality to disregard and set at naught the orders of the public service commission in cases like the one now before us would not only cause confusion of authority but would make of no effect some of the work of the commission for the doing of which it was established."
Long Island Lighting Company (hereafter called Lilco) serves a population of over 2,000,000 people in the entire counties of Nassau, Suffolk and part of Queens. It is required by sections 65 and 66 of the Public Service Law to provide safe, adequate, dependable and economical electric service to all within its franchise area who properly apply therefor. Its electric transmission system forms part of an electric power-pooling network extending throughout New York and neighboring States. There is no dispute that the new generating station and transmission line involved herein is necessary to enable Lilco to perform those obligations to all of its consumers. The immediate controversy, although it importantly affects the entire distribution system of Lilco and all other public utility companies in the State, concerns whether 3.1 miles of transmission line traversing vacant land in the Town of Huntington, Suffolk County, can be required by the Town Zoning Board  contrary to the express determination of the Public Service Commission  to be constructed underground.
The Public Service Commission has found that it would cost $1,727,000 more to install these 3.1 miles of transmission line underground. The extra cost ultimately has to be paid, of course, by the rate payers on the entire Lilco system, unless it were to result in increasing proportionately the rates of consumers in the Town of Huntington as was done by the Virginia State Corporation Commission in Matter of Chesapeake & Potomac Tel. Co. of Va. (12 P U R 3d 517). Some such procedure would appear to be necessary to prevent preferences, unless subdivision 3 of section 65 of the Public Service Law is to be violated, which provides that "No gas corporation, electric corporation or municipality shall make or grant any undue or unreasonable preference or advantage to any person, corporation or locality, or to any particular description of service in any respect whatsoever, or subject any particular person, *656 corporation or locality or any particular description of service to any undue or unreasonable prejudice or disadvantage in any respect whatsoever."
"It is elementary that privately owned utilities must be allowed a fair return on the value of their property used and useful in the public service" (Matter of Village of Boonville v. Maltbie, 272 N.Y. 40, 48; Public Service Law, § 72), so that obviously the extra cost of placing these conduits underground must be added to the rate base on which the rates are paid throughout the system, unless, as the Zoning Board does not imply, the extra cost be charged exclusively upon the Town of Huntington. Very possibly this town includes, as the Town Attorney declares, the choicest residential sites upon Long Island, and it may well be that the vacant land through which this power transmission line would go is well adapted to future residential subdivisions. It will hardly do to lay down a principle of law that determinations of the Public Service Commission regarding overhead or underground transmission lines through residentially zoned areas can be overridden only if they are as beautifully situated as is the Town of Huntington. Other towns also pride themselves upon their appearances, and most of the vacant land in the State is zoned for residential purposes. It was estimated upon the argument that 80% of the 800 miles of Lilco's overhead transmission lines traverse residentially zoned areas. If so, and if it costs five times more to install transmission lines underground (the Federal Power Commission indicates between five and ten times the amount  I National Power Survey 156 [1964]), it would require hundreds of millions of dollars to put all of Lilco's overhead transmission lines underground which pass through residential districts under zoning ordinances. A similar situation would confront other public utility companies as well as the State Power Authority unless it were held to enjoy special privilege as an arm of the State. That this is no figment of the imagination is shown at page 19 of respondents' brief where it is stated "that the municipality of tomorrow will receive all of its power through sub-surface installations" and that "Today's more advanced ideas will be commonplace tomorrow".
The same issue with regard to this 3.1 miles of installation in the Town of Huntington was before the Public Service Commission which found, after hearing the parties, that "Overhead *657 transmission lines are the usual means of transporting electrical energy throughout the State. Many of the areas through which these high tension, overhead transmission lines pass are similar in character to those over which the proposed line will traverse."
The commission further stated: "Public utilities are required by law to render public service at the most reasonable costs. The cost of placing the proposed line underground in oil-pressured pipes would run approximately five times the cost of an overhead line. After giving due consideration to the testimony in this record, we can find no factors which would reasonably justify such an expenditure especially where, as here, the proposed overhead transmission line demonstratively would be equally as safe and reliable as an undeground line."
Other States have been confronted with this problem, and have resolved it by giving precedence to the determinations of the public regulatory body. Thus in Duquesne Light. Co., v. Upper St. Clair Tws. (377 Pa. 323), a local zoning board was not permitted to nullify the determination of the State Public Service Commission by preventing the erection of steel towers for a new transmission line by requiring underground construction. The court said (p. 336) that "Local authorities not only are ill-equipped to comprehend the needs of the public beyond their jurisdiction, but, and equally important, those authorities, if they had the power to regulate, necessarily would exercise that power with an eye toward the local situation and not with the best interests of the public at large as the point of reference." The Pennsylvania Supreme Court added (p. 334) that so to rule could "make it impossible for the utility to perform its statutory duty of rendering adequate and efficient service." The Duquesne case was followed and elaborated by the Superior Court of the same State in Willits v. Pennsylvania Public Utility Comm. (183 Pa. Super. Ct. 62, app. dsmd. 355 U. S. 11).
The New Jersey Supreme Court was confronted with a similar problem in Matter of Public Serv. Elec. & Gas Co. (35 N. J. 358) and upheld the State Board of Public Utility Commissioners against a determination of the town authorities that the power line must go underground. Local legislation was held invalid which would have required power lines carrying more than 33,000 volts to be installed underground. The court said (p. 370): "We are firmly of the opinion the trial *658 court properly decided the subject matter to be outside the scope of the municipal power by reason of legislative commitment thereof to the expertness and statewide authority of the Board of Public Utility Commissioners."
Regarding a local zoning ordinance, similar to the one here involved, which purported to forbid the issuance of permits for overhead construction unless the local Board of Adjustment found that "the use in the case in question would not be detrimental to the health, safety and general welfare of the community and is reasonably necessary for the convenience of the community" (pp. 361-362), it was further held that regulating the transmission of electric power had been confided to the State Regulatory Board, and (pp. 376-377) that "The statutory phrase, `for the service, convenience and welfare of the public' refers to the whole `public' served by the utility and not the limited local group benefited by the zoning ordinance." The court added (p. 375): "Moreover, and of particular significance here, calling something `zoning' cannot cloak a municipality with power to act in a field and in a way which is otherwise foreclosed to it by supervening state legislation or policy."
The following statement by the New Jersey Supreme Court (p. 373) is particularly apt to the case now before us: "It is rather difficult to conceive of a subject which more requires uniform regulation at a high and broad level of authority than the method of transmission of electric power, especially where it must be generated in a single location and distributed and used in many and distant places. Were each municipality through which a power line has to pass free to impose its own ideas of how the current should be transmitted through it, nothing but chaos would result, and neither the utility nor the state agency vested with control could be assured of ability to fulfill its obligations of furnishing safe, adequate and proper service to the public in all areas."
It is true that there are specific provisions in the Pennsylvania and New Jersey statutes, which, in instances of conflict, purport to give precedence to the State utility regulating body over the local authorities, but the decisions are reasoned on the basis that, generally speaking, transmission of electric power pertains to the expertise of the State regulatory body where it has to be lodged in order to prevent localities from impeding *659 or preventing the discharge of the statutory duty of the utility to furnish safe and adequate service to the public at just and reasonable charges (cf. Public Service Law, § 65).
True to that underlying necessity, the courts of our State have held that zoning ordinances or boards cannot prevent the construction of power lines through municipalities (Matter of Long Is. Light. Co. v. Horn, 23 A D 2d 583; Matter of Consolidated Edison Co. v. Village of Briarcliff Manor, 208 Misc. 295). On that prior appeal in this case, the Appellate Division intimated that the zoning board would have power to grant approval on condition that these electric transmission lines be placed underground. Support is adduced for that determination by Matter of Long Is. Light. Co. v. Shields (190 Misc. 797, affd. 274 App. Div. 803, affd. 299 N.Y. 562). That case aided in prompting a textwriter to say that in New York "the municipalities retain sufficient power to protect neighborhoods and to require such conformity to the community plan as will not hinder safe and adequate service." (Anderson, Zoning Law and Practice in New York State, p. 318.) An examination of the record in that case indicates, however, that all that was involved there was a direction for the underground installation of about 240 feet of a power line at the intersection of two built-up streets in a village. There were findings that those high power wires over this limited distance would be dangerous in close proximity to nearby buildings. That creates a difference not merely in degree but in kind from a situation such as the present, where the proposed course of the power line is over vacant land and through woods for a distance of 3.1 miles and the objection is not that the public safety is endangered, which the Public Service Commission has found it is not and the town does not claim, but simply that it lies in a residential zone and is adaptable to residential development which will not be prevented but may be somewhat affected by the project.
This pertains to public utility regulation, and not merely to local and incidental conditions within the province and competence of a zoning board. The location of a substation may be affected by zoning (Matter of Long Is. Light. Co. v. Incorporated Vil. of East Rockaway, 279 App. Div. 926, affd. 304 N.Y. 932), if it does not materially affect the distribution of electricity in a municipality but, where it does, then a substation can be placed in a use district not in conformity with the local ordinance *660 (Matter of Long Is. Light. Co. v. City of Long Beach, 305 N.Y. 880). In Long Is. Light. Co. v. Old Brookville (72 N. Y. S. 2d 718, 719, affd. 273 App. Div. 856, affd. 298 N.Y. 569), the village was not allowed to prevent "the construction of these lines, claiming that the towers and lines are commercial structures, the erection and maintenance of which is, by the terms of the Village zoning ordinance, prohibited in residential areas of which the Village largely consists." The Special Term opinion, from which that quotation is taken, cited Jewish Consumptives' Relief Soc. v. Town of Woodbury (230 App. Div. 228, affd. 256 N.Y. 619), which upheld the power of a State department over the zoning regulations and board of a municipality, which would have prohibited the location of a tuberculosis sanitorium. The same principle has been followed in New York with regard to schools (Union Free School Dist. No. 14 v. Village of Hewlett Bay Park, 279 App. Div. 618) and churches (Matter of Diocese of Rochester v. Planning Bd. of Town of Brighton, 1 N Y 2d 508). These institutions, as well as public utility corporations, serve purposes that are public or affected with a public interest.
The circumstance that some zoning power has been admitted over public utilities does not mean, in the language of the opinion in Matter of Consolidated Edison Co. v. Village of Briarcliff Manor (supra, p. 300), that it has "the effect of permitting the local legislative body to override such State law and policy." To hold that a local zoning ordinance or board can preclude the construction of overhead transmission lines over vacant land merely for the reason that it is adaptable to residential development would confer on zoning boards power to regulate public utilities. An overhead transmission line is a different kind of facility from an underground, pipe type cable. Each system, the record shows, is based upon different conducting, cooling and installation space characteristics. It could easily result in the prohibition of the extension of necessary public utility facilities. This question involves cost, rates and the rational, uniform development of a State-wide electric transmission network, over which, it seems to me, the jurisdiction of the Public Service Commission is paramount and exclusive. This town appeared at the hearings held by the Public Service Commission to consider the necessity of the proposed overhead line. If it was aggrieved by the decision of the commission, its proper *661 remedy was to review the commission's order, rather than to nullify it by collateral attack by denying a zoning permit.
The decision of this appeal cannot hinge upon any special aesthetic or exclusive aspects of the Town of Huntington. No such distinction can legally be drawn. If this can be done in Huntington, it can be done anywhere in suburban or rural districts where land is capable of being developed for residential uses and is in such use districts, without comparison of the relative beauty of locations and surroundings. The situation is manifestly different from power lines in cities or other built-up areas where overhead power lines would be liable to come in contact with other structures. There underground installation is generally necessary to the public safety, as is usually recognized by the Public Service Commission, as it was where the minor fraction of this transmission line is being constructed underground, in places where the condemnation of overhead rights of way would, likewise, have been prohibitive in cost on account of the condemnation of buildings and other structures.
The order appealed from should be reversed and respondent Zoning Board of Appeals directed to issue the permit applied for.
Order affirmed, etc.